No. 67,044

STATE OF KANSAS, *Appellee,* v. JASON C. LINN, *Appellant.*
(840 P.2d 1133)

Opinion filed October 30, 1992.

*Steven R. Zinn,* assistant appellate defender, argued the cause, and *Jessica R. Kunen,* chief appellate defender, was with him on the brief for appellant.

*Ann L. Smith,* county attorney, argued the cause, and *Robert T. Stephan,* attorney general, was with her on the brief for appellee.

The opinion of the court was delivered by

LOCKETT, J.: Defendant was convicted of first-degree felony murder (K.S.A. 1989 Supp. 21-3401), aggravated battery (K.S.A. 21-3414), and aggravated burglary (K.S.A. 21-3716). He was sentenced to life imprisonment on the felony-murder conviction and 5 to 20 years on each of the other two convictions, with all the sentences to run consecutively. On appeal, the defendant claims the trial court erred in (1) failing to specify the underlying felony intended for a conviction for aggravated burglary; (2) failing to instruct the jury on the lesser included offense of involuntary manslaughter; (3) failing to instruct that criminal trespass was a lesser included offense of aggravated burglary; and (4) after the trial, refusing to redetermine the defendant's competency during the trial. Defendant also claims there was insufficient evidence that the defendant was sane when he committed the offense, there was insufficient evidence to find the killing occurred during the aggravated burglary, and the trial court abused its discretion by imposing consecutive maximum sentences.

During the afternoon of May 21, 1990, Jason Linn, who was 21 years of age, went to the house where his sister and Lori Near lived to eat dinner and watch television. At some point during the evening of May 21, 1990, Linn left the house for a party at the home of a friend. At the party, Linn consumed alcohol and some LSD. He departed after he was involved in an altercation with another individual, but returned to the party several times. At about 2:30 a.m., he returned to his sister's house. His sister was at work. Linn told Lori Near he had left his radio at the party and stated he was going to go get it. After Linn had left the house, Lori Near heard screaming and the sounds of "someone getting hit with a big club or something."

Oliver and Vicie Teal, an elderly couple, lived close to Near's house. Mr. Teal was 89 years old. The Teals, who slept in separate rooms, went to bed between 11:00 and 11:30 p.m. on May 21, 1990. During the early morning hours, Mrs. Teal entered Mr.

Teal's room and woke him. Jason Linn was standing beside Mrs. Teal. Mrs. Teal told her husband Linn wanted money. Mr. Teal testified the defendant said "he wanted me" and started hitting him in the head with something like a piece of metal he had in his hand. During the altercation, Mr. Teal forced Linn out the front door and locked it.

After being locked out of the Teal home, Linn kicked in the front door, came back into the house, and again began hitting Mr. Teal on the head. Mr. Teal attempted to hit the defendant with a pipe wrench, but dropped it. Mr. Teal told his wife to get a shovel, which was outside by the garage. Once Mr. Teal had the shovel, he managed to hit the defendant and force him outside the home again. Mr. Teal dropped the shovel and went back into the house. Mr. Teal could not remember what happened after that.

Later that morning the Teal children arrived at their parents' house. Mrs. Teal was on the front porch, covered with blood. A shovel with blood on it was found next to the sidewalk. Mr. Teal was inside the house, sitting on the floor and leaning against a chair, holding his wallet, which contained more than $800 in cash. He had blood on him and spots of blood were found in the bathroom. Mr. Teal was drifting in and out of consciousness but was breathing on his own. The police were called.

Without regaining consciousness, Mrs. Teal died as a result of a fractured skull and damaged brain. Mr. Teal survived the injuries he received.

The jury convicted Linn of first-degree murder of Vicie Teal, aggravated battery of Oliver Teal, and aggravated burglary. On appeal, Linn raises seven issues.

## FAILURE TO SPECIFY THE FELONY WHEN INSTRUCTING THE JURY ON AGGRAVATED BURGLARY

Defendant was charged with felony murder. The underlying felony for the murder charge was aggravated burglary. In a separate count, Linn was charged with aggravated burglary of the Teal home. The charge of aggravated burglary alleged that defendant entered or remained in the home "with intent to commit a felony or theft therein."

Prior to instructing the jury, defense counsel requested that the felony-murder instruction specify aggravated burglary as the underlying felony. The judge agreed. Defense counsel also requested that the aggravated burglary instruction specify the underlying crime as theft. The State argued its evidence would support theft, aggravated battery, or robbery as the underlying felony for aggravated burglary.

In his instruction, the trial judge incorporated the language of the aggravated burglary statute (K.S.A. 21-3716). The judge's instruction stated that to find the defendant guilty of aggravated burglary the jury must find Linn entered or remained in the residence "with the intent to commit a felony or theft therein." The instruction is similar to the State's complaint. Defense counsel objected to this instruction, arguing there was no evidence of an intent to commit any crime other than a theft. The State argued that there was evidence of Linn's intent to commit the offenses of robbery, aggravated battery, and theft. The trial judge overruled defendant's objection. The judge's instruction to the jury failed to specify a specific felony the defendant allegedly intended to commit inside the Teal home or specify the statutory elements of theft or any other felony.

The judge's instruction allowed the prosecutor to state in closing argument:

"Aggravated burglary, that the Defendant knowingly entered into and remained in the residence. No question that he did so without authority. To commit a felony or theft therein. *There are a number of felonies, robbery, intent to commit aggravated burglary, intent to commit aggravated battery, or a number of other things,* and that, at that time, there was a human being in the residence." (Emphasis added.)

During deliberations, the jury submitted a question to the judge asking for "a complete description of . . . felony." After a discussion with counsel, the trial judge informed the jury that a felony is a crime for which punishment could be in excess of one year in a state penitentiary. The trial court's response to the jury's question was approved by counsel for the State and the defendant.

On appeal the defendant does not contest the fact that there was evidence from which the jury could have found an intent to commit a theft, but argues the question submitted by the jury

shows that the defendant was prejudiced by the court's use of the term "felony" in the aggravated burglary instruction. Linn argues that if the jury had based its verdict for the felony-murder and aggravated burglary convictions upon an intent to commit a theft, there would have been no reason for it to have requested the judge to define the term "felony." Linn contends the trial court's answer to the jury's question did not clarify or guide the jury because the answer defined felony rather than stated the specific offenses and their statutory elements. Linn asserts that the specific underlying felony intended by an accused in making an unauthorized entry is an essential element of the offense of burglary. See *State v. Skelton*, 247 Kan. 34, 49, 795 P.2d 349 (1990). Linn claims that the judge's instruction required the jury to speculate as to the elements of the various underlying offenses alleged by the State. Defendant argues that the trial court's failure to specify in its instruction the felony he was alleged to have intended to commit inside the residence requires a reversal of both the aggravated burglary conviction and the felony-murder conviction, which is based on the aggravated burglary.

The State contends there was sufficient evidence to convict Linn of aggravated burglary based upon his intent to commit theft, robbery, or aggravated battery. It argues that because there was evidence to support a conviction for those offenses, failure to specify the underlying felony in the instruction is not reversible error.

Burglary is defined as "knowingly and without authority entering into or remaining within any . . . [b]uilding, mobile home, tent or other structure, with intent to commit a felony or theft therein." K.S.A. 1989 Supp. 21-3715. Aggravated burglary merely requires the additional element that the place of the burglary be occupied by a human being during the course of the burglary. K.S.A. 21-3716.

The State admits that an information charging aggravated burglary is defective in form unless the underlying felony intended by the accused in making the unauthorized entry is specified. It notes that if the underlying felony intended in a burglary is made clear to the defendant at the preliminary hearing or by the context of the other charge or charges in the information, the State's failure to allege the specific intended felony does not constitute

reversible error. Such failure cannot result in surprise or be considered prejudicial to the defendant's substantial rights at the trial when the intended felony was made clear in advance of the trial. *State v. Lora,* 213 Kan. 184, 188-89, 515 P.2d 1086 (1973); see *State v. Maxwell,* 234 Kan. 393, 398, 672 P.2d 590 (1983). Defendant makes no claim that he was not apprised of the crimes charged. The question raised is whether the trial judge's failure to state the specific underlying felony and its statutory elements in his instructions to the jury deprived the defendant of a fair trial.

Under the Constitution of the United States and the Constitution of the State of Kansas, a person accused of a crime is guaranteed the right to a fair trial. In cases tried to a jury, the judge and jury have separate and distinct functions. It is for the judge to determine and decide questions of law presented during the trial and to state the applicable law in the judge's instructions to the jury. It is for the jury to decide the facts from the evidence submitted and to render a verdict in accordance with the judge's instructions.

An error of constitutional magnitude is serious and may not be held to be harmless unless the appellate court is willing to declare a belief that it was harmless beyond a reasonable doubt. *State v. White,* 246 Kan. 28, 37, 785 P.2d 950, *aff'd as modified* 246 Kan. 393, 789 P. 2d 1175 (1990).

An instruction as to the offense of aggravated burglary is defective unless it specifies and sets out the statutory elements of the offense intended by an accused in making the unauthorized entry. Under the circumstances here, the trial judge's failure to state the specific underlying felony or felonies and their elements prevented the jury from rendering a lawful verdict and was an error of constitutional magnitude depriving the defendant of a fair trial. Under the circumstances, Linn's conviction for felony murder and aggravated burglary must be set aside and the defendant granted a new trial.

Because Linn will receive a new trial, we will answer some of the other claims raised by the defendant's appeal.

## WAS AN INSTRUCTION ON THE LESSER INCLUDED OFFENSE OF INVOLUNTARY MANSLAUGHTER REQUIRED?

The trial judge instructed the jury on felony murder and the lesser included offenses of second-degree murder and voluntary manslaughter. The defendant asserts the trial judge, by giving instructions on second-degree murder and voluntary manslaughter as lesser included offenses of murder in the first degree, necessarily must have determined that the evidence of the offense of aggravated burglary was weak. See *State v. Foy,* 224 Kan. 558, 567, 582 P.2d 281 (1978). Defense counsel made no request for an instruction on involuntary manslaughter and did not object to the failure to give that instruction.

On appeal, the defendant claims that an involuntary manslaughter instruction should have been given because there was evidence that he unintentionally killed Vicie Teal during the commission of the misdemeanor offense of criminal trespass, *i.e.,* (1) the killing was unintentional as a result of his inability to formulate a specific intent due to his mental illness and/or intoxication, and (2) his underlying conduct was the misdemeanor offense of trespass.

A party may not assign as error the giving or failure to give an instruction unless the party objects thereto, stating the specific grounds for the objection. Absent such objection, an appellate court may reverse only if the trial court's failure to give the instruction was clearly erroneous. The failure to give an instruction is clearly erroneous only if the reviewing court reaches a firm conviction that if the trial error had not occurred there was a real possibility the jury would have returned a different verdict. *State v. DeMoss,* 244 Kan. 387, 391-92, 770 P. 2d 441 (1989).

Aggravated burglary is "knowingly and without authority entering into or remaining within any building . . . or other structure . . . in which there is some human being, with intent to commit a felony or theft therein." K.S.A. 21-3716.

Involuntary manslaughter is

"the unlawful killing of a human being, without malice, which is done *unintentionally in the wanton commission of an unlawful act not amounting to felony.* . . As used in this section, an 'unlawful act' is any act which is prohibited by a statute of . . . the state of Kansas . . . which . . . is enacted for the protection of human life or safety." (Emphasis added.) K.S.A. 21-3404.

Criminal trespass is

"entering or remaining upon or in any . . . structure . . . by a person who knows he or she is not authorized or privileged to do so, and: (a) Such person enters or remains therein in defiance of an order not to enter or to leave such premises or property personally communicated to such person by the owner thereof or other authorized person; or (b) such premises or property are . . . locked or . . . shut or secured against passage or entry." K.S.A. 21-3721.

Involuntary manslaughter requires that the *killing* must be unintentional. *State v. Gregory,* 218 Kan. 180, 184, 542 P.2d 1051 (1975). The State points out there was no evidence that Linn accidentally or unintentionally killed Mrs. Teal or caused her death while defending himself. It notes the defendant's defense at trial was insanity, not self-defense. The jury was instructed that "intentionally means conduct that is purposeful and willful and not accidental." The jury implicitly rejected this argument when it determined Linn was sane and his capacity was not diminished, and Linn was not entitled to the voluntary intoxication defenses. The State asserts no reasonable construction of the evidence indicates Mrs. Teal's death was accidental or unintentional, *i.e.,* the defendant accidentally or unintentionally hit her over the head with the shovel.

After reviewing the record we find there is no evidence that Linn's killing of Mrs. Teal was unintentional.

Linn next argues the evidence is inconclusive because the jury could have found he lacked the specific intent to commit the offense of aggravated burglary, but intended to commit a misdemeanor trespass.

Was there evidence that Linn was committing a misdemeanor trespass rather than a felony? The only evidence for this claim is the psychologist's testimony that Linn told him that after leaving the party where he had been involved in a fight, he heard sirens and felt that law enforcement officials were attempting to pick him up. Linn told the psychologist that he entered the Teal house in an attempt to avoid being arrested.

Lesser included offense instructions are not required in felony-murder cases unless the evidence of the underlying felony is weak or inconclusive. *State v. Strauch,* 239 Kan. 203, Syl. ¶ 7, 718 P.2d 613 (1986). *State v. Foy,* 224 Kan. at 567.

Was the evidence of the underlying felony weak or inconclusive? Mr. Teal testified his wife told him defendant wanted money and he told defendant he did not have any money. In addition, when found, Mr. Teal was clutching a billfold with $802 in it. The single statement that defendant told the psychologist that he went into the Teal house to elude police would not reasonably cause a jury to convict the defendant of involuntary manslaughter. See *State v. Cummings,* 242 Kan. 84, 91, 744 P.2d 858 (1987).

The trial court has a duty to instruct the jury on all lesser included offenses which are supported by the evidence. K.S.A. 21-3107(3). This is true regardless of whether there is a request for such an instruction. Although the evidence in support of an instruction on a lesser included offense need not be strong and must be viewed in the light most favorable to the defendant, *State v. Cummings,* 242 Kan. at 91, the duty to instruct on lesser crimes of which the accused might be found guilty under the information or indictment arises only where there is evidence upon which the accused might reasonably be convicted of the lesser offense. *State v. Long,* 234 Kan. 580, 592, 675 P.2d 832 (1984).

After reviewing all the evidence, we conclude the evidence is not such that the defendant might reasonably have been convicted of criminal trespass. Under the facts, the trial judge's failure to give an instruction on involuntary manslaughter is not erroneous.

## THE FAILURE TO ORDER A REDETERMINATION OF DEFENDANT'S COMPETENCY AT THE TIME OF THE TRIAL

Prior to trial, the district judge ordered a determination of defendant's competency to stand trial. After the evaluation and report were completed, the trial court found defendant competent to stand trial. After his conviction, defense counsel filed a second motion for a competency evaluation of Linn to determine if Linn was in fact competent at the time of the trial. Defendant states the basis for the second evaluation was the fact that he had been off his prescribed medication prior to trial and that statements he made to his attorney during the trial demonstrated that he did not understand the nature of the proceedings.

K.S.A. 22-3302 provides for an evaluation to determine competency after the defendant has been charged with a crime and before the district judge's pronouncement of sentence. A person is "incompetent to stand trial" when he or she is charged with a crime and, because of mental illness or defect, is unable (a) to understand the nature and purpose of the proceedings against him or her or (b) to make or assist in making his or her defense. On appeal, the reviewing court's inquiry on a trial court's determination that a defendant is competent to stand trial is whether the trial court abused its discretion. *State v. Perkins,* 248 Kan. 760, Syl. ¶¶ 4, 5, 811 P.2d 1142 (1991).

At the post-trial hearing to determine if Linn should again be examined to determine if he was competent, the trial court noted it had observed the defendant during the trial. The judge found there was no evidence that required an additional evaluation of the defendant to determine his competency during his trial. Under the circumstances, the trial court did not abuse its discretion in denying defendant's motion for a competency evaluation.

## WAS THERE SUFFICIENT EVIDENCE TO PRECLUDE THE JURY'S FINDING OF SANITY AT THE TIME OF THE OFFENSE?

When the sufficiency of the evidence is challenged, the standard of review on appeal is whether, after review of all the evidence, viewed in the light most favorable to the prosecution, the appellate court is convinced that a rational factfinder could have found the defendant guilty beyond a reasonable doubt. *State v. Baker,* 249 Kan. 431, Syl. ¶ 11, 819 P.2d 1173 (1991); *State v. Graham,* 247 Kan. 388, 398, 799 P.2d 1003 (1990). Defendant contends, notwithstanding the testimony of the State's expert witnesses, the evidence at trial failed to prove beyond a reasonable doubt that he was sane.

There is a presumption of sanity in a criminal proceeding that may be relied upon by the prosecution to establish a prima facie case. The prosecution is never required to introduce evidence of sanity until some evidence is introduced which, if believed by the jury, could raise a reasonable doubt as to a defendant's sanity at the time the offense was committed. This evidence may come from either the defendant or the State. Once evidence has been

introduced indicating the possible insanity of the defendant, the burden of proving the defendant is sane rests with the State. *State v. Bates,* 226 Kan. 277, Syl. ¶¶ 2, 3, 597 P.2d 646 (1979).

Defendant's argument on appeal is a recitation of his evidence presented at trial. Even where expert medical evidence is unanimous that the accused was legally insane at the time of the act, such testimony is not conclusive. *State v. Jackson,* 238 Kan. 793, Syl. ¶ 5, 714 P.2d 1368 (1986). Defendant has made no showing that the evidence presented by the State was insufficient for a finding of sanity at the time of the offense. This issue is without merit.

## WAS THERE SUFFICIENT EVIDENCE TO FIND THE KILLING OCCURRED DURING THE COMMISSION OF AN AGGRAVATED BURGLARY?

Linn argues that Mrs. Teal was discovered in a state of unconsciousness on the front porch of her home and that the shovel allegedly used to kill her was discovered lying on the sidewalk next to the porch. He points out that the blood found inside the house was not consistent with Mrs. Teal's blood and that there was evidence that defendant hit Mrs. Teal outside the house. He asserts there is no evidence that the killing occurred during flight from the house; therefore, it is not part of the res gestae of the aggravated burglary. He argues that the injuries which caused Vicie Teal's death were not inflicted until defendant left the house; thus, her death occurred after the burglary had terminated. He concludes the killing did not occur during the perpetration of the aggravated burglary, as required by K.S.A. 1989 Supp. 21-3401(a)(1), and therefore there is no felony murder.

We disagree with this conclusion. Time, distance, and the causal relationship between the underlying felony and the killing are factors to be considered in determining whether the killing is a part of the felony and, therefore, subject to the felony-murder rule. Whether the underlying felony had been abandoned or completed prior to the killing so as to remove it from the ambit of the felony-murder rule is ordinarily a question of fact for the jury to decide. *State v. Hearron,* 228 Kan. 693, Syl. ¶ 2, 619 P.2d 1157 (1980). Here, the jury concluded that the killing was

committed as part of the aggravated burglary and formed the basis for felony murder. This claim has no merit.

Because the defendant has been granted a new trial, other issues raised in the appeal need not be discussed. The defendant's conviction for aggravated battery stands. The convictions for murder in the first degree and aggravated burglary are set aside and the matter is remanded for a new trial on those charges.