No. 84,285

STATE OF KANSAS, *Appellee*, v. DEON DEAN, *Appellant*.

(33 P.3d 225)

Opinion filed October 26, 2001.

*Craig H. Durham*, assistant appellate defender, argued the cause, and *Jessica R. Kunen*, chief appellate defender, was with him on the brief for appellant.

*Lois K. Malin*, assistant county attorney, argued the cause, and *Robert R. Johnson*, assistant county attorney, and *John P. Wheeler, Jr.*, county attorney, and *Carla J. Stovall*, attorney general, were with her on the brief for appellant.

The opinion of the court was delivered by

LOCKETT, J.: Defendant appeals convictions of felony murder, attempted aggravated robbery, three counts of aggravated battery, and an aggravated weapons violation claiming (1) the district court violated his Sixth Amendment right to confrontation by refusing to allow the defendant to introduce evidence that a witness previously lied in a statement to police; (2) the prosecutor violated defendant's Fourteenth Amendment right to due process by asking defendant to comment on the credibility of the State's witnesses; and (3) the district court failed to instruct the jury it must unanimously agree as to the means or acts by which the defendant committed felony murder.

On July 26, 1998, Garden City, Kansas, police officer Troy Davis was dispatched to apartments at 1819 Comanche in Garden City for a call of shots fired. Davis observed numerous individuals standing in the parking lot and a young Hispanic male in his 20's lying on his back between some cars. The man was Jesus Miguel Terrazas, a/k/a Eddie Sanchez. Terrazas had a single gunshot wound.

The incident that resulted in the death of Terrazas began a short time prior to the shooting. The parking lot was lighted. There were two parties going on in the apartment complex parking lot. One party consisted of several Hispanic men, including Jesus Beltran, Ruben Corral, Roberto Baca, Roberto Hernandez, and Terrazas. A group of black and white males, including the defendant Deon

Dean, a black male, had gathered near the apartment of Matt Jaramillo.

There are several versions of the events by various witnesses. Generally, the witnesses agree that Jaramillo, who spoke in Spanish, approached the Hispanic group. In an attempt to sell cocaine, Jaramillo produced a small quantity of cocaine. A few of the men tasted the powder. Jaramillo invited them to his apartment for more cocaine. Baca and Corral went with Jaramillo to his apartment. Shortly after they returned, Beltran and Terrazas left in Terrazas' car to pick up Terrazas' brother. Beltran was driving.

Bryan Kramer, one of the men with Dean, saw Jaramillo approach the Hispanic men and briefly speak to them. Jaramillo informed Kramer that he had been "ripped off," *i.e.*, someone had taken drugs from him. Jaramillo told Kramer, Dean, James Elliott, and Terrell Parker that he was going to the Hispanic group to get his money. Jaramillo said, "Don't let them jump me."

On the way to the other group, Jaramillo stopped the car driven by Beltran. Jaramillo spoke with Terrazas, who was in the passenger seat. Jaramillo stated that Baca and Corral had robbed him because they did not pay him for the cocaine. Terrazas asked Jaramillo how much money was owed. Jaramillo said that Baca and Corral owed him $10.

Kramer's version of the events indicates that Terrazas attempted to give Jaramillo $10. Kramer stated that a fight broke out before Jaramillo was able to take the money, and the car sped away at a high speed. Jaramillo, Dean, Kramer, Elliott, and Parker continued to walk down the parking lot. They approached some Hispanic men who were drinking by a truck. Jaramillo spoke in Spanish to a man. A fight broke out. Elliott did not join in the fight.

Kramer stated that after Terrazas obtained a chain from the trunk of his car, Dean pulled a handgun and pointed it at Terrazas. Terrazas started running. One of the men with Jaramillo hit Terrazas and knocked him out. Kramer stated Dean pointed the gun at the Hispanic group and said, "Give me your wallet." As Kramer started to leave the scene, he saw Dean hit a man in the head with the gun. As Kramer walked away, he heard a gunshot, looked back,

and observed Dean and Parker running away. Kramer testified that Elliott was in his car when the gun fired.

Kramer was charged with felony murder, conspiracy to deliver cocaine, sale of cocaine, three counts of aggravated battery, and aggravated robbery. Pursuant to a plea agreement, Kramer pled guilty to two counts of aggravated battery and robbery in exchange for testifying at Dean's trial.

Elliott, who also testified against Dean, stated that as he was walking back to the apartment, he turned and saw one of the Hispanic men (Terrazas) leaning against a truck. Elliott observed Dean lean around and fire a single shot at Terrazas. After the shot, everyone started running. Elliott testified that Dean stuffed a gun into his pants and ran toward Elliott's car. A friend, Christy Jeffrey, was in the car. Elliott jumped into the passenger seat. Dean jumped into the driver's seat and drove the car away.

Another witness, LaBronze "Ken" Garrett, was standing outside of his apartment. Garrett saw the two parties in the complex parking lot. He was not a friend of either group. Garrett stated that without provocation about 15 black men from one group "jump[ed] on" the Hispanic group.

As Garrett watched, some of the Hispanic men ran and others were on the ground "getting stomped." Some of the attackers began shouting, "[b]last him" and "[s]hoot him. Shoot that fool." Garrett observed Dean, a former acquaintance of his, with a gun in his hand. The gun fired. Garrett called 911.

After the fight, Baca's wallet, which contained a Mexican license, an address book, and approximately $250, was missing. Police found Baca's address book, a business card, and an insurance claim reporting card on the ground at the scene. The officer did not locate Baca's wallet, money, or license.

Hernandez, the half brother of Terrazas, had little recollection of the fight. He recalled being in the parking lot with his friends when a Mexican-American man (Jaramillo) and several black men approached. After Jaramillo said something about money, Hernandez was struck in the mouth, which cut his lip and left a scar. He was then knocked unconscious and awoke to find his brother lying on the ground.

Corral testified that a group of black men lead by Jaramillo approached his group and began speaking in English. He recognized the English word "money." Corral observed one of the black men pull a gun, put it to Baca's head, and then Corral's head. Corral could not identify the man. Corral was hit in the back of the head, lost consciousness. He fell beneath a truck. The sound of a single gunshot made him regain consciousness. When asked who had been shot, he was told that it was Terrazas.

After the shooting, Dean, Elliott, Shasta Mullen, and Christy Jeffrey left the scene in a car. According to Elliott, Dean asked Christy if she would leave town with him. When Dean asked Elliott if he could take Elliott's car to Dodge City, Elliott refused. Dean then asked Elliott if he could leave his gun at Elliott's apartment. Elliot refused. Elliott testified that the gun had originally belonged to him, and he had sold it to Dean prior to the shooting.

Elliott's brother, Warren, testified that he recalled Dean purchasing the gun from Elliott and had observed Dean carry the gun on at least seven or eight occasions. Dean left Elliott's apartment while Elliott was out of the room. Dean left the gun on the counter. Elliot testified that when he found the gun on his kitchen counter, he put the gun behind his television, out of the reach of his 2-year-old daughter. The gun was recovered in Elliott's apartment. Dean's fingerprint was found on the clip of the gun.

An amended complaint charged Dean with premeditated murder of Terrazas and, in the alternative, felony murder committed in the commission of, attempt to commit, or flight from an inherently dangerous felony, *i.e.*, delivery of cocaine and/or aggravated robbery and/or attempted aggravated robbery of Roberto Baca and/or Ruben Corral and/or Roberto Hernandez; aggravated battery of Roberto Baca; aggravated battery of Ruben Corral; aggravated battery of Roberto Hernandez; and aggravated weapons violation.

Dean testified at trial. Dean admitted that he was involved in the fight instigated by Jaramillo at the apartment complex. When Dean saw Terrazas approach the fight carrying chains, he ran from the scene. Dean denied any involvement in the shooting of Terrazas. Dean was convicted of felony murder, attempted aggravated

robbery, aggravated battery of Roberto Baca; aggravated battery of Roberto Hernandez; aggravated battery of Ruben Corral; and aggravated weapons violation. Dean appeals.

### Sixth Amendment Right to Confrontation

The trial judge refused to permit Dean to introduce evidence that Elliott, who testified he had sold the gun to Dean, had lied as to where Elliott had purchased the gun.

When reviewing a constitutional challenge to the admission of evidence, the appellate court applies the federal constitutional error rule. Under that rule, an error may not be held to be harmless unless the appellate court is willing to declare beyond a reasonable doubt that the error had little, if any, likelihood of having changed the result of the trial. *State v. Lyons*, 266 Kan. 591, 598, 973 P.2d 794 (1999).

Dean made two proffers at trial regarding evidence that Elliott had previously made false statements to the police as to where Elliott had originally purchased the handgun. Elliott told police that he purchased the gun from Coyote Pawn Shop. That statement was false. Dean argued that evidence was relevant to show that Elliott was willing to tell the police a convenient story to avoid trouble. The judge ruled that evidence was not relevant.

The second proffer made by Dean was that Elliott had told police in a statement that he had purchased the gun from a licensed firearms dealer. Dean stated that the gun shop owner would testify that he has no record of that sale. The State objected and argued that evidence was not relevant. The trial court ruled that testimony of where Elliott had purchased the gun was a specific instance of conduct tending to prove a character trait of the witness and was inadmissible.

Dean contends that the trial court erred by refusing to allow testimony regarding where the Elliott had purchased the gun. He argues that the evidence was not offered to impugn Elliott's character, but to question Elliott's credibility as a truthful witness.

K.S.A. 60-420 provides:

"Subject to K.S.A. 60-421 and 60-422, for the purpose of impairing or supporting the credibility of a witness, any party including the party calling the witness

may examine the witness and introduce extrinsic evidence concerning any conduct by him or her and any other matter relevant upon the issues of credibility."

K.S.A. 60-422(d) provides that evidence of specific instances of misconduct of a witness relevant only as tending to prove a trait of his or her character is inadmissible where offered for the sole purpose of attacking the credibility of the witness. Evidence of a specific instance of a person's conduct other than evidence of conviction of a crime is inadmissible to prove a trait of the person's character. K.S.A. 60-447; *Shirley v. Smith*, 261 Kan. 685, Syl. ¶ 2, 933 P.2d 651 (1997).

Dean cites *Dewey v. Funk*, 211 Kan. 54, Syl. ¶ 3, 505 P.2d 722 (1973), to support his position that exclusion of evidence under K.S.A. 60-422 must bow to a defendant's right to confront his or her accusers. In *Dewey*, a paternity action, the plaintiff testified that she was a virgin prior to her relationship with the defendant. The defendant offered the testimony of a witness concerning admissions made to her by the plaintiff regarding prior sexual intercourse with other men. The plaintiff objected. The trial court ruled that evidence of sexual intercourse with others at a time beyond the period of conception was inadmissible.

As an offer of proof presented to the court outside the presence of the jury, the witness testified that the plaintiff admitted she had sexual intercourse with at least three men prior to the incident with the defendant. The *Dewey* court concluded that the witness should have been permitted to testify as to these admissions. It stated that the testimony of the plaintiff that she was a virgin was highly prejudicial to the defendant. The *Dewey* court observed that a litigant who draws from his or her own witness irrelevant testimony which is prejudicial to the opposing litigant ought not to object to its contradiction on the ground of its irrelevancy. 211 Kan. at 57. It concluded that when a party introduces inadmissible and prejudicial evidence, the opposing party may introduce similar evidence necessary for removing an unfair prejudice.

*Dewey* has no relevance to this case. *Dewey* refers to the right of a defendant to bring in specific instances of prior acts to rebut evidence the opposing party introduced on a collateral matter

that, if left unrebutted, would unfairly prejudice the defendant. Here, the State did not offer into evidence information where Elliott had purchased the gun. Therefore, there was no need for Dean to introduce evidence that Elliott had made a false statement to the police regarding where he had purchased the gun.

Dean also cites *State v. Nixon*, 223 Kan. 788, 576 P.2d 691 (1978), *State v. Beans*, 247 Kan. 343, 800 P.2d 145 (1990), and *State v. Macomber*, 241 Kan. 154, 734 P.2d 1148 (1987), to support his contention that prior acts of misconduct are admissible to show that the witness lied in the present case. The cases cited are factually distinguishable from this case in that in each of those cases, the defendant sought to introduce specific instances of misconduct to rebut untrue testimony that had been presented to the jury. As noted previously, Elliott did not testify to the jury that he bought the gun from a licensed firearms dealer. Therefore, there was no evidence presented to the jury for Dean to rebut.

Elliott admitted that he was the prior owner of the gun. Where he had purchased the gun was not relevant. The evidence was inadmissible as a specific instance of a prior bad act offered to attack the witness' credibility. The trial court did not err in refusing to admit evidence that Elliott did not purchase the gun from a licensed firearms dealer.

### Prosecutorial Misconduct

Dean contends that the prosecutor committed misconduct during his cross-examination by repeatedly asking Dean to comment on the truthfulness of witnesses who had testified. Dean points to the following questions asked of him by the prosecutor:

"Q. Now it's been testified to earlier that Christy Jeffery told police that you told her that you took that wallet from the crime scene. Did you hear that?

"A. Yes, I heard that.

"Q. And Christy Jeffery was telling the truth when she said that, wasn't she?

"A. No, she was not.

"Q. Is there any reason that Christy Jeffery would want to lie about something like that?

"A. (Pause.)

"MR. MOORMAN: Your Honor, that does call for speculation on part of the witness, and we'd object.

"THE COURT: Sustained.

. . . .

"Q. And when you left the scene you handed Shasta Mullen a billfold, didn't you?

"A. No, I did not.

"Q. So Shasta Mullens [sic] would be also lying, is that your testimony?

"A. I -I guess."

. . . .

"Q.   So, if Mr. Elliott testified that you and Christy talked about leaving for Dodge, you are saying that he wasn't telling the truth?

"A. Yeah, basically."

"Q. If Christy Jeffery told police that you took a wallet from — from that scene, are — is it your testimony that she would not be telling the truth?

"A. Yes. I didn't take a wallet.

. . . .

"Q. If Mr. Garrett testified that he saw you with a gun on that date and that you fired that gun. It's your testimony that he wouldn't be correct . . . ?

"A. Yeah. I know for a fact that he didn't see me.

"Q. And if Bryan Kramer testified that he saw you with a gun in your hand and pointing it at individuals, it's your testimony that Bryan Kramer wouldn't be correct either, is it?

"A. Yeah. Bryan said he seen me doing a lot of stuff.

"Q. And if Mr. James Elliott said he saw you point the gun and fire, it's your testimony that he wouldn't be telling the truth, either, isn't it?

"A. Yeah. He knows he did it.

"Q. So, it's your testimony that you're telling the truth and everyone else is — is lying; isn't that correct?

"A. I guess."

There was one objection to the prosecutor's questions. The objection was that the question called for speculation on the part of the witness. The objection did not specifically state that the questions required the witness to pass on the credibility of other witnesses.

Dean submitted additional authority pursuant to Supreme Court Rule 6.09(b) (2000 Kan. Ct. R. Annot. 41), the case of *State v. Manning*, 270 Kan. 674, 19 P.3d 84 (2001). In *Manning*, the defendant did not object to the manner in which he was cross-examined by the State.

The *Manning* court observed that the lack of objection to the trial court does not preclude review by this court in part because of the unique role of the prosecutor and stated:

"A prosecutor should be mindful of his or her role in criminal proceedings. The United States Supreme Court discussed the role of a prosecutor in *Berger v. United States*, 295 U.S. 78, 88, 79 L. Ed. 1314, 55 S. Ct. 629 (1935), and stated:

'[A prosecuting attorney] is the representative not of an ordinary party to a controversy, but of a sovereignty whose obligation to govern impartially is as compelling as its obligation to govern at all; and whose interest, therefore, in a criminal prosecution is not that it shall win a case, but that justice shall be done. As such, he is in a peculiar and very definite sense the servant of the law, the twofold aim of which is that guilt shall not escape or innocence suffer. He may prosecute with earnestness and vigor—indeed, he should do so. But, while he may strike hard blows, he is not at liberty to strike foul ones. It is as much his duty to refrain from improper methods calculated to produce a wrongful conviction as it is to use every legitimate means to bring about a just one.' " *Manning*, 270 Kan. at 697-98.

The *Manning* court reviewed many cases of other jurisdictions to hold that "[q]uestions which compel a defendant or witness to comment on the credibility of another witness are improper. It is the province of the jury to weigh the credibility of the witnesses." *Manning*, 270 Kan. at 698.

In *Manning*, the improper questions asked by the prosecutor were tempered by Manning's responses. The first two times the prosecutor asked Manning if other witnesses were lying, Manning indicated that he " 'didn't say it.' " The third and fourth time the prosecutor asked Manning if other witnesses were lying, he responded, " 'Most likely.' " The fifth time the prosecutor asked, " 'They're all lying, right?' " but Manning did not directly respond. *Manning*, 270 Kan. at 700.

The *Manning* court held that although the questions asked by the prosecutor were wholly improper, given Manning's responses and the evidence against him, the improper questions did not prejudice the jury against Manning and deny him a fair trial. *Manning*, 270 Kan. at 702.

Here, the prosecutor committed misconduct by requiring Dean to comment on the credibility of the State's witnesses. Dean's answers to the questions about the other witnesses' credibility did not temper the effect of the misconduct.

This court recently discussed prosecutorial misconduct which occurred during closing arguments in *State v. Pabst*, 268 Kan. 501, 996 P.2d 321 (2000). In *Pabst*, this court held that prosecutorial

misconduct may be reviewed on appeal "regardless of whether the issue of prosecutorial misconduct is preserved by an objection at trial." 268 Kan. 501, Syl. ¶ 2. Our analysis of prosecutorial misconduct requires a finding that the actions of the prosecutor constitute "plain error" in the event there is no objection. The actions of the prosecutor must be "so gross and flagrant as to prejudice the jury against the accused and deny a fair trial, requiring reversal." 268 Kan. 501, Syl. ¶ 3. The standard of review discussed and applied in Pabst also applies when a prosecutor is cross-examining a defendant who has chosen to take the stand. *State v. Manning*, 270 Kan. 674, 697, 19 P.3d 84 (2001).

Just as in *Manning*, the evidence against Dean is overwhelming. For this reason, the prosecutor's misconduct does not require reversal.

## Verdict

In multiple acts cases, several acts are alleged and any one of the acts could constitute the crime charged. *State v. Timley*, 255 Kan. 286, Syl. ¶ 2, 875 P.2d 242 (1994). When the prosecution presents evidence of several acts that could form the basis of one count charged, either the State must inform the jury which act to rely on in its deliberations or the court must instruct the jury to agree on a specific criminal act. 255 Kan. at 289.

Dean contends he was deprived of his right to jury unanimity because the jury instructions listed in the alternative multiple acts of attempted robbery to support the charge of felony murder and because the jury was not instructed to unanimously agree on the act by which he committed attempted robbery. Dean asserts that the inclusion of three possible victims in the robbery instruction and the lack of unanimity instruction regarding which victim the jury found Dean to have actually attempted to rob, violate Dean's right to a unanimous verdict.

To analyze Dean's complaint, we must review the jury instructions for felony murder and aggravated robbery, and attempted aggravated robbery, which is the underlying felony for the felony-murder conviction.

The felony-murder jury instruction provided, in part:

"The defendant is charged with the crime of murder in the first degree. The defendant pleads not guilty.

"To establish this charge, each of the following claims must be proved:

"1. That the defendant killed Jesus Miguel Meraz-Terrazas a/k/a/ Eric Sanchez a/k/a/ Eddie Sanchez.

"2. *That such killing was done while in the commission of or attempting to commit or flight from the crime of aggravated robbery.*

"3. That this act occurred on or about the 26th day of July 1998, in Finney County, Kansas." (Emphasis added.)

Dean was not charged with aggravated robbery. However, because Dean was charged with attempted aggravated robbery, the judge instructed on the elements of aggravated robbery to assist the jury in its consideration of whether Dean attempted that crime:

"To establish the charge of aggravated robbery, each of the following claims must be proved:

"1. That the defendant intentionally took property from the person of *Roberto Baca, Ruben Corral or Roberto Hernandez;*

"2. That the taking was by threat of bodily harm to his or their person;

"3. That the defendant was armed with a dangerous weapon, a gun; and,

"4. That this act occurred on or about the 26th day of July, 1998, in Finney County, Kansas." (Emphasis added.)

The elements of attempt to commit aggravated robbery were set out in the jury instructions as follows:

"The defendant is charged with the crime of an attempt to commit aggravated robbery. The defendant pleads not guilty.

"To establish this charge, each of the following claims must be proved:

"1. That the defendant performed an act toward the commission of the crime of aggravated robbery;

"2. That the defendant did so with the intent to commit the crime of aggravated robbery;

"3. That the defendant failed to complete commission of the crime of aggravated robbery; and,

"4. That this act occurred on or about the 26th day of July, 1998, in Finney County, Kansas."

The trial court instructed the jury that one of the elements of felony murder was that the "killing was done while in the commission of or attempting to commit or flight from the crime of aggravated robbery," and the underlying felony conviction, at-

tempted aggravated robbery, was alleged to have been committed against one of three persons or all of three persons.

Dean objected at the instructions conference to the inclusion of the names of Ruben Corral and Roberto Hernandez in the aggravated robbery instruction. Dean argued that there was no evidence presented that property was taken from Corral or Hernandez. The judge responded by noting that the charge was *attempted* robbery rather than robbery. The implication being that it was not necessary to prove that property was actually taken from Corral or Hernandez for the jury to consider whether Dean attempted to rob these men.

The jury found Dean guilty of felony murder and attempted aggravated robbery, the underlying felony for the felony-murder conviction. The verdict form did not provide for the jury to unanimously find or identify which of the three persons listed in the instructions it found Dean attempted to rob. The verdict form merely states: "We, the jury, find the defendant GUILTY of attempted aggravated robbery."

Dean argues that the result is similar to *State v. Linn*, 251 Kan. 797, 800, 840 P.2d 1133 (1992) (superceded by statute on other grounds, *State v. Hedges*, 269 Kan. 895, 8 P.3d 1259 [2000]).

In *Linn*, the defendant was charged and convicted of felony murder. The underlying felony for the murder charge was aggravated burglary. In a separate count, the defendant was charged with aggravated burglary. The charge of aggravated burglary alleged that the defendant entered or remained in the home " 'with intent to commit a felony of theft therein.' " 251 Kan. at 799. The State presented evidence that the defendant entered the residence with the intent to commit one of three crimes, theft, aggravated battery, or robbery, as the underlying felonies for the charge of aggravated burglary. The *Linn* court concluded that the district court erred in failing to list the specific underlying felonies and their elements for the charge of burglary when the instruction stated that the jury must find that the defendant entered or remained within the residence " 'with the intent to commit a felony or theft therein.' " The error deprived the defendant of a fair trial, and the convictions of felony murder and aggravated burglary were set aside, and the defendant was granted a new trial.

Here, the conviction of felony murder is premised on the finding that Dean committed the attempted robbery of Baca, Hernandez, or Corral. Dean asserts it cannot be determined from the verdict form which one or all of the alleged attempted robberies the jury found Dean to have committed. Furthermore, the jury was not instructed that it must be unanimous in determining which of the attempted robberies Dean committed.

The State attempts to analogize this case to a bank robbery where a bank robber enters the bank and orders the bank patrons to turn over their valuables. In that scenario, the robber is appre-hended prior to actually taking any valuables from the patrons. The State contends that under those facts, the robber would be guilty of attempted robbery, and the names of the individuals he or she attempted to rob would be of no legal significance. The State cites no case where this court has upheld a conviction based on a general act of attempted robbery without specific victims. Furthermore, the State's argument begs the question presented because, in this case, the judge in his robbery instruction specified the names of the individual victims Dean attempted to rob.

In *State v. Hill*, 271 Kan. 929, 26 P.3d 1267 (2001), the court set forth the appropriate analysis for reviewing a claim that the defendant's right to a unanimous verdict was violated by the trial court's failure to give a unanimity instruction with respect to mul-tiple acts of alleged rape. The *Hill* court rejected a structural error analysis and adopted a two-step harmless error analysis. The first step of the harmless error analysis is to determine whether there is a possibility of jury confusion from the record or if the evidence showed either legally or factually separate incidents. Incidents are legally separate when the defendant presents different defenses to separate sets of facts or when the court's instructions are ambig-uous and tend to shift the legal theory from a single incident to two separate incidents. Incidents are factually separate when in-dependent criminal acts have occurred at different times or when the later criminal act is motivated by "a fresh impulse." If jury confusion is not shown under the first step, the second step is to determine whether the error in failing to give a unanimity instruc-

tion was harmless beyond a reasonable doubt with respect to all acts alleged. 271 Kan. at 939.

In *Hill*, the defendant was charged with one act of rape. The evidence presented at trial included an allegation that the defendant was guilty of more than one act of rape of the victim. On appeal, the defendant contended that the trial court committed reversible error by failing to instruct the jury that its verdict must be unanimous regarding which of the two acts constituted the rape conviction. The district court gave a general unanimity instruction; however, the court did not instruct the jury that its verdict must be unanimous regarding which of the two acts constituted the rape charged. The *Hill* court noted that the evidence presented as to both acts of rape were materially identical and the defendant did not present a separate defense or offer materially distinct evidence of impeachment regarding a particular act. Instead, the defendant presented a general denial of participation in any wrongful conduct; therefore, there was no reason to assume jury confusion. The *Hill* court held that under these circumstances, the lack of a specific unanimity instruction was harmless error. 271 Kan. at 940.

Here, we note that in addition to instructions on the elements of the crimes charged, the jury was instructed as follows:

"Instruction No. 3

"Each crime charged against the defendant is a separate and distinct offense. You must decide each charge separately on the evidence and law applicable to it, uninfluenced by your decision as to any other charge. The defendant may be convicted or acquitted on any or all of the offenses charged. Your finding as to each crime charged must be stated in a verdict form signed by the Presiding Juror."

## Instruction No. 23 provided, in part:

"Your verdicts must be founded entirely upon the evidence admitted and the law as given to these instructions.

"Your agreement upon a verdict must be unanimous."

There is sufficient evidence of an attempted robbery of Baca, Corral, and Hernandez. Baca's wallet and money were taken during the fight, and witnesses overheard references to "money" directed at each of these men during the fight. Dean did not present a separate defense or offer materially distinct evidence of impeach-

ment regarding a particular act. Instead, Dean presented a general denial of participation in any wrongful conduct; therefore, there was no reason to assume jury confusion. Dean was convicted of only one count of attempted aggravated robbery, which is sufficient to support the conviction of felony murder. Under these circumstances, the lack of a specific unanimity instruction was harmless error.

Affirmed.