NOT DESIGNATED FOR PUBLICATION

No. 112,997

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

WILLIAM B. SINGLETON,
*Appellant*.

MEMORANDUM OPINION

Appeal from Sedgwick District Court; DAVID L. DAHL, judge. Opinion filed January 29, 2016.
Affirmed.

*Heather Cessna*, of Kansas Appellate Defender Office, for appellant.

*Julie A. Koon*, assistant district attorney, *Marc Bennett*, district attorney, and *Derek
Schmidt*, attorney general, for appellee.

Before BRUNS, P.J., MCANANY, J., and JOHNSON, S.J.

*Per Curiam*: William B. Singleton was charged in the alternative with fleeing or
attempting to elude a police officer (1) by fleeing from an officer attempting to make a
traffic stop in violation of K.S.A. 2014 Supp. 8-1568(b)(1)(C) (count 1) and (2) by
driving around tire deflating "stop sticks" during the officer's ensuing pursuit in violation
of K.S.A. 2014 Supp. 8-1568(b)(1)(B) (count 2). He was convicted on both counts. At his
sentencing, the court recognized that the charges were in the alternative and sentenced
Singleton on count 1 to a sentence of 16 months in prison, followed by a 12-month period
of postrelease supervision. He appeals this conviction and sentence, claiming the district

1

court erred (1) in instructing the jury on the charge of fleeing or attempting to elude a police officer, (2) in instructing the jury on the burden of proof without preserving the right to jury nullification, and (3) in misclassifying a prior crime as a person felony when computing his criminal history score.

*Facts*

The events leading to his appeal began when Wichita Police Officer Richard Bachman attempted to stop a Buick automobile driven by Singleton. Singleton's car briefly slowed but then sped off. Officer Bachman followed in pursuit as Singleton raced down Hillside, a street with a speed limit of about 40 miles per hour. Other streets involved in the chase had lower speed limits. At times, Singleton's car reached a speed of 75 miles per hour. Singleton ignored numerous stop signs and stop lights along the way and swerved to avoid "stop sticks" placed by the police at several intersections. Singleton led the police through various neighborhoods of the city. Eventually the stop sticks punctured Singleton's right front tire, but Singleton continued on in his efforts to evade the police even after his tire was shredded and he was driving on the tire rim. As he drove on, his tire rim cut grooves into the roadway. Officer Bachman testified, "He was actually losing control of his vehicle." Singleton eventually brought the car to a stop, and he was arrested. Officer Bachman estimated that the chase covered a distance of more than 7 miles.

The presentence investigation (PSI) report prepared after Singleton's convictions showed a number of prior convictions, including a conviction in Missouri in 1992 for attempted rape. This Missouri conviction was before Kansas adopted its sentencing guidelines. The district court classified Singleton's rape conviction as a person felony and determined his criminal history score was A.

On appeal, Singleton first claims trial errors relating to the court's jury instructions. His first claim relates to the court's instruction on the elements of fleeing or attempting to elude a police officer.

*Reckless Driving*

Singleton contends the district court committed reversible error by not instructing the jury on the elements of reckless driving when defining the elements of the charge in count 1.

Singleton did not object to the court's instruction, so we apply the clearly erroneous standard. See K.S.A. 2014 Supp. 22-3414(3); *State v. Williams*, 295 Kan. 506, 515, 286 P.3d 195 (2012). Under this standard, if we determine the instruction was given in error, we will reverse only if we are firmly convinced that the jury would have reached a different verdict without the error. *State v. Cameron*, 300 Kan. 384, 389, 329 P.3d 1158, *cert. denied* 135 S. Ct. 728 (2014).

The challenged jury instruction states:

"In count one, the defendant is charged with the crime of fleeing or attempting to elude a police officer. The defendant pleads not guilty.
"To establish this charge, each of the following claims must be proved:
"1. The defendant was driving a motor vehicle.
"2. The defendant was given a visual or audible signal by a police officer to bring the motor vehicle to a stop.
"3. The defendant willfully failed or refused to bring the motor vehicle to a stop, or otherwise fled or attempted to elude a pursuing police vehicle.
"4. The police officer giving such a signal was in uniform, prominently displaying such officer's badge of office.
"5. The police officer's vehicle was appropriately marked showing it to be an official police vehicle.

3

"6.  *The defendant engaged in reckless driving.*

"7.  This act occurred on or about the 11th day of November, 2013, in Sedgwick County, Kansas.

"'Reckless' means driving under circumstances that show a realization of the imminence of danger to another person or the property of another where there is a conscious and unjustifiable disregard of that danger." (Emphasis added.)

Fleeing or attempting to elude a police officer can be a class B nonperson misdemeanor. K.S.A. 2014 Supp. 8-1568(c)(1)(A). But when the offense involves driving around tire deflation devices or reckless driving, as charged here, the offense becomes a severity level 9 person felony. K.S.A. 2014 Supp. 8-1568(b) and (c)(2).

Though Singleton was convicted of both driving around a tire deflation device and driving recklessly, these charges were in the alternative. At sentencing Singleton was sentenced based upon the reckless driving alternative, and it is his conviction under this alternative that he is appealing.

The district court has the duty to define the offense charged in the jury instructions, either in the language of the statute or in appropriate and accurate language of the court. Furthermore, the district court has the duty to inform the jury of every essential element of the crime that is charged. *State v. Richardson*, 290 Kan. 176, 181, 224 P.3d 553 (2010).

"When a statute makes the commission of a crime or the intent to commit a crime an element of another crime, the jury instructions must set out the statutory elements of the underlying offense." 290 Kan. at 182; see *e.g.*, *State v. Rush*, 255 Kan. 672, 679, 877 P.2d 386 (1994); *State v. Linn*, 251 Kan. 797, 801-02, 840 P.2d 1133 (1992), *superseded by statute on other grounds by State v. Hedges*, 269 Kan. 895, 8 P.3d 1259 (2000); *State v. Walker*, 21 Kan. App. 2d 950, 954, 910 P.2d 868 (1996).

4

Here, the district court was required to instruct the jury on the statutory elements of reckless driving. Felony fleeing or attempting to elude a police officer under K.S.A. 2014 Supp. 8-1568(b)(1)(C) requires a specific showing of "reckless driving as defined by K.S.A. 8-1566."

Reckless driving involves either willful conduct or wanton conduct. K.S.A. 8-1566(a) provides: "Any person who drives any vehicle in *willful or wanton* disregard for the safety of persons or property is guilty of reckless driving." (Emphasis added.) Here, the court's instruction used the words to define the wanton conduct aspect of reckless driving: "[D]riving under circumstances that show a realization of the imminence of danger to another person or the property of another where there is a conscious and unjustifiable disregard of that danger."

K.S.A. 2014 Supp. 21-5202(j) defines reckless conduct as: "A person acts recklessly or is reckless, when such person consciously disregards a substantial and unjustifiable risk that circumstances exist or that a result will follow, and such disregard constitutes a gross deviation from the standard of care which a reasonable person would exercise in the situation." Wanton conduct was included in the term "recklessness" under the prior version of the statute. See K.S.A. 21-3201(c).

Wanton conduct in the context of operating an automobile is reckless driving. In the court's jury instruction, it gave the jury the definition of wanton conduct in this context. Thus, in its jury instruction the district court included all the elements necessary for the jury to find that Singleton engaged in reckless driving by his wanton conduct while attempting to flee or elude the police. The jurors were not left to speculate what the court meant when it told them that they must find that Singleton engaged in reckless driving as he attempted to elude Officer Bachman. The instruction made clear that upon a showing by the State that Singleton drove the Buick "under circumstances that show a realization of the imminence of danger to another person or the property of another where

5

there is a conscious and unjustifiable disregard of that danger," the jury could conclude that Singleton drove recklessly, thus satisfying the requirements for a conviction.

The district court did not err in giving this instruction. But even if it had, there was overwhelming and uncontested evidence to support Singleton's conviction and to render any potential error harmless. See *Richardson*, 290 Kan. at 182. If there was something erroneously omitted from the court's instruction, the evidence could not have "'rationally lead to a contrary finding with respect to the omitted element.'" 290 Kan. at 183 (quoting *Neder v. United States*, 527 U.S. 1, 19, 119 S. Ct. 1827, 144 L. Ed. 2d 35 [1999]).

Here, the only evidence at trial came from Officer Bachman. It was uncontested that Singleton fled from Officer Bachman and attempted to elude him by driving at a high speed through urban and residential areas. Singleton's vehicle reached as high as 75 miles per hour during the pursuit, well in excess of the posted speed limits. Moreover, he ignored numerous stop lights and stop signs along the way.

In closing argument, Singleton's counsel essentially conceded the accuracy of the officer's testimony regarding the movements of the car he was pursuing, as described in the fact section of this opinion. She argued that "[no one] was jeopardized by this pursuit." But the focus of her argument was what happened after the final stop. She argued: "[Officer Bachman] was very clear and very concise about those details [of the chase]. He testified that when the vehicle finally came to a stop that he identified Mr. Singleton. He did not identify Mr. Singleton as the driver of the vehicle." This argument was in spite of Officer Bachman's trial testimony:

"Q. And did you have contact with the driver of this vehicle?

"A. I did.

"Q. And did you identify him.

6

"A.    I did.

"Q.    Who did you identify him as?

"A.    William Singleton."

Defense counsel continued with her closing argument: "There was testimony that was replete about how this Buick traveled that night, where it went, where it stopped and when it slowed down. But when it came to the final resting place of that vehicle, you have very little evidence as to what actually happened."

Defense counsel's argument was that there were others in the Buick and it was not established that Singleton, rather than one of the other occupants, was the driver. Obviously, the jury rejected this argument, and the sufficiency of the evidence supporting that finding is not challenged in this appeal. Nor does Singleton challenge the sufficiency of the evidence establishing that his driving constituted an "imminence of danger to another person or the property of another." Given the uncontested testimony on what the driver of the Buick did that night, we cannot say that we are firmly convinced that the jury would have reached a different verdict had there been some error in the court's jury instruction. Thus, Singleton has failed to demonstrate that he was prejudiced by the giving of this instruction.

*Jury Nullification*

Singleton contends the jury instruction on the burden of proof was clearly erroneous because it failed to preserve the jury's right to nullification. Jury Instruction No. 5 instructed the jury, without objection, as follows:

> "The State has the burden to prove the defendant is guilty. The defendant is not required to prove he is not guilty. You must presume that he is not guilty unless you are convinced from the evidence that he is guilty.

7

"The test you must use in determining whether the defendant is guilty or not guilty is this:  If you have a reasonable doubt as to the truth of any of the claims required to be proved by the State, you must find the defendant not guilty. If you have no reasonable doubt as to the truth of each of the claims required to be prove by the State, you *should* find the defendant guilty." (Emphasis added.)

Singleton seizes on the phrase "you should find the defendant guilty" and argues that the use of the word "should" improperly compelled the jury to find him guilty rather than giving the jury the option of not finding him guilty notwithstanding the law and the evidence.

Because there was no objection to this instruction, we examine it using the clearly erroneous standard discussed above.

Jury nullification is

"'[a] jury's knowing and deliberate rejection of the evidence or refusal to apply the law either because the jury wants to send a message about some social issue that is larger than the case itself or because the result dictated by law is contrary to the jury's sense of justice, morality, or fairness.' Black's Law Dictionary 875 (8th ed. 2004)." *Silvers v. State*, 38 Kan. App. 2d 886, 888, 173 P.3d 1167, *rev. denied* 286 Kan. 1180 (2008).

Before a trial begins, all jurors swear on their oaths to try the case conscientiously and to return a verdict according to the law and the evidence. K.S.A. 2014 Supp. 60-247(d). Violation of that oath is to be neither commended nor encouraged. While jurors in a criminal case have it within their power to acquit a defendant by disregarding the law and evidence, the Kansas Supreme Court has consistently held that jury instructions informing juries of the power of nullification are not appropriate. See *State v. Smith-Parker*, 301 Kan. 132, 164, 340 P.3d 485 (2014); *State v. Naputi*, 293 Kan. 55, Syl. ¶ 4, 109 P.3d 1199 (2005); *State v. McClanahan*, 212 Kan. 208, 210-17, 510 P.2d 153 (1973).

Singleton attempts to distinguish not informing a jury of its right to nullify from misinforming the jury that it has no such right. He relies on *Smith-Parker*, which overruled *State v. Lovelace*, 227 Kan. 348, 607 P.2d 49 (1980).

In *Lovelace*, the defendant challenged an instruction that stated: "'If you have no reasonable doubt as to the truth of any of the claims made by the State, you *must* find the defendant guilty as charged.'" (Emphasis added.) 227 Kan. at 354. At that time, PIK Crim. 52.02 used "should" rather than "must." The Kansas Supreme Court held the instruction was not given in error. The court found "no substantial difference [between should and must] and what differences there may be could very well be in [the defendant's] favor." 227 Kan. at 354.

In 2014, the Kansas Supreme Court overruled *Lovelace* in *Smith-Parker*, wherein the district court instructed the jury: "'If you do not have a reasonable doubt from all the evidence that the State has proven murder in the first degree on either or both theories, then you *will* enter a verdict of guilty.' (Emphasis added.)" 301 Kan. at 163. The court in *Smith-Parker* found "the wording of the instruction at issue in *Lovelace*—'must'—and the wording at issue here—'will'—fly too close to the sun of directing a verdict for the State. A judge cannot compel a jury to convict, even if it finds all elements proved beyond a reasonable doubt." *Smith-Parker*, 301 Kan. at 164.

Singleton argues that in the challenged instruction in this case "should" is the equivalent of "will," just as the court found in *Smith-Parker* that "must" is the equivalent of "will." Therefore, Singleton concludes that the use of "should" in this instruction violates the rule in *Smith-Parker* by compelling the jury to convict.

But as every teacher instructing a class knows, and as every parent admonishing a child knows, should is less of an imperative than must or will. See *State v. Pennington*, 254 Kan. 757, 764, 869 P.2d 624 (1994). Nutritionists urge that we all should eat our

9

vegetables. But that does not constitute a directive to have recalcitrant diners force-fed their vegetables if they do not comply. A parent admonishing a child that he should eat his lima beans is clearly less of an imperative than the phrase every child has heard at one time or another, "You *will* eat your lima beans!" Should as used in this instruction is not the equivalent of "must" or "will" used in the instructions discussed in *Lovelace* and *Smith-Parker*. *Should* is advisory. It is not an imperative. The district court did not err in giving this instruction.

*Criminal History*

Singleton claims his sentence is illegal because the district court misclassified his 1992 Missouri conviction for attempted rape as a person felony. He relies on *State v. Murdock*, 299 Kan. 312, 323 P.3d 846 (2014), *modified by Supreme Court order* September 19, 2014, *overruled by State v. Keel*, 302 Kan. 560, 357 P.3d 251 (2015). Further, he asserts that the retroactive application of House Bill 2053 violates the Ex Post Facto Clause of the United States Constitution.

Although Singleton did not file a motion to correct an illegal sentence, K.S.A. 22-3504(1) authorizes us to correct an illegal sentence at any time.

> "An illegal sentence is: (1) a sentence imposed by a court without jurisdiction; (2) a sentence that does not conform to the applicable statutory provision, either in character or term of authorized punishment; or (3) a sentence that is ambiguous with respect to the time and manner in which it is to be served." *State v. Lewis*, 299 Kan. 828, 858, 326 P.3d 387 (2014) (citing *State v. Taylor*, 299 Kan. 5, 8, 319 P.3d 1256 [2014]).

Singleton's claim falls squarely under the second category because he claims his sentence does not conform to our statutory sentencing guidelines.

Whether a prior conviction is properly classified as a person or nonperson crime is a question of law over which we have unlimited review. *Keel*, 302 Kan. 560, Syl. ¶ 4. Here, Singleton's prior Missouri attempted rape conviction was not determinative of his criminal history score. Singleton had ample postsentencing guidelines convictions to qualify him for a criminal history score of A without regard to his prior Missouri attempted rape conviction. Besides, *Murdock*, on which he relies, has been overturned by *Keel*, 302 Kan. 560, Syl. ¶ 9. *Keel* controls and we are duty bound to follow it. See *State v. Ottinger*, 46 Kan. App. 2d 647, 655, 264 P.3d 1027 (2011), *rev. denied* 294 Kan. 946 (2012). Singleton's remaining argument is moot.

Affirmed.