No. 103,774

STATE OF KANSAS, *Appellee*, v. CHRISTOPHER BROOKS, *Appellant.*

(305 P.3d 634)

Opinion filed July 26, 2013.

*Samuel D. Schirer*, of Kansas Appellate Defender Office, argued the cause, and *Ryan Eddinger*, of the same office, was on the brief for appellant.

*Michael Gayoso, Jr.*, county attorney, argued the cause, and *Steve Six*, attorney general, was with him on the brief for appellee.

The opinion of the court was delivered by

JOHNSON, J.: Christopher Brooks was convicted of rape and aggravated criminal sodomy as the result of a jury trial in which the victim testified that Brooks had a scar on his penis. Brooks sought

a new trial, based on the ineffective assistance of his trial counsel in failing to seek a continuance to obtain evidence to rebut the existence of such a scar. Brooks requested our review of that portion of the Court of Appeals opinion finding that the deficient performance of Brook's trial counsel was not reversibly prejudicial under the second prong of the ineffective assistance of counsel test from *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674, *reh. denied* 467 U.S. 1267 (1984). Brooks contends that, in reaching its conclusion that the error was not prejudicial, the Court of Appeals impermissibly weighed the probative value of the scar evidence and assessed the victim's credibility. We agree with that contention and reverse both the Court of Appeals and district court. The matter is remanded to the district court for a new trial.

### FACTS AND PROCEDURAL OVERVIEW

In April 2008, then 12-year-old S.C. informed her mother that Brooks, her estranged stepfather, had molested her. S.C.'s mother reported this information to the Pittsburg Police Department, and S.C. was subsequently interviewed by a detective. S.C. told the detective that the molestation began with Brooks fondling her vagina when she was 3 years old and progressed to vaginal and oral sex when she was 9 years old. S.C. also informed the detective that she had not been sexually active with anyone other than Brooks.

At trial, S.C. testified that Brooks began having sexual intercourse with her in 2004, when she was 9 years old. She said that the sexual abuse happened too many times to count; that sometimes Brooks would sexually assault her two or three times a night; and that during the summer of 2007, he sexually assaulted her on almost a daily basis. S.C. recounted one occasion in 2004 when Brooks forced her and a friend, C.G., to perform oral sex on each other. But she also admitted that she had lied to the police about her prior sexual history, revealing that she had "consensual" sexual intercourse with one other individual on three different occasions from October 2007 to April 2008.

In S.C.'s sexual assault examination, the nurse noted significant injury to S.C.'s hymen. The nurse opined that the injuries were

consistent with nonconsensual sexual intercourse and it was unusual to see that much injury to the hymen of a 12-year-old girl. S.C. did not tell the nurse about her consensual sexual intercourse with another. The nurse acknowledged that her findings may have been affected if S.C. had disclosed her other sexual activity, but the nurse still maintained that S.C.'s injuries were not consistent with consensual sexual intercourse.

During cross-examination, S.C. was asked if she could describe anything unusual about Brooks' genitalia. She answered that Brooks was uncircumcised and had a scar on the side of his penis. Brooks immediately advised his counsel that he had no such scar and said he wanted to testify in order to impeach S.C.'s testimony. Defense counsel advised Brooks against taking the stand and recommended finding another way to establish that Brooks did not have a scar on his penis. However, defense counsel failed to follow through on obtaining any such impeachment testimony.

The jury found Brooks guilty of two counts but acquitted him of five counts. He was convicted on Counts 5 and 6, charging him with the rape and aggravated criminal sodomy of S.C. during 2004. The counts upon which Brooks was acquitted encompassed the rape and aggravated criminal sodomy of C.G. during 2004; the aggravated criminal sodomy of both S.C. and C.G. during 2004; and the rape and aggravated criminal sodomy of S.C. during 2007.

Prior to sentencing, Brooks filed a motion for new trial on several grounds, including an allegation of ineffective assistance of counsel of trial counsel for failing to impeach S.C.'s testimony describing the scar on Brooks' penis. Brooks submitted medical records from a prison physician who had examined Brooks' penis and detected no visible scars. The district court denied Brooks' motion and sentenced him to 186 months' imprisonment for the rape conviction and 123 months for the aggravated criminal sodomy conviction.

Brooks timely appealed his convictions, raising several issues of error, including the ineffective assistance of counsel claim that was raised in his motion for a new trial. The Court of Appeals remanded the matter to the district court for more complete findings in order to adequately address the ineffective assistance of counsel claim. Subsequently, the district court conducted a supplemental eviden-

tiary hearing wherein Brooks' trial counsel admitted that he should have sought a trial continuance in order to have a medical examination performed to establish whether Brooks had a scar on his penis. After the hearing, the district court filed additional findings and conclusions that determined Brooks was fully informed of his right to testify and that trial counsel's performance was not constitutionally deficient. The district court made no specific findings with regard to whether trial counsel's performance was deficient for failing to request a trial continuance in order to obtain evidence independent of Brooks' testimony to rebut S.C.'s testimony regarding the scar.

In addressing Brooks' ineffective assistance of counsel claim, the Court of Appeals held that Brooks' trial counsel was deficient for failing to request a trial continuance in order to consider an appropriate strategy to impeach S.C.'s credibility. *State v. Brooks*, No. 103,774, 2011 WL 2793303, at *4 (Kan. App. 2011) (unpublished opinion). However, the Court of Appeals concluded that there was no reasonable probability that the failure to impeach S.C.'s testimony regarding the scar would have changed the outcome of Brooks' trial. 2011 WL 2793303, at *5. The court first questioned the weight that should have been given to the victim's testimony that she observed a scar on Brooks' penis at least 4 years and perhaps 10 years prior to trial. Then the panel assessed that "S.C.'s credibility would likely have survived such an approach" of impeaching the existence of a penile scar. 2011 WL 2793303, at *5. Finding no error from the other issues appealed, the Court of Appeals affirmed Brooks' convictions. 2011 WL 2793303, at *10. Brooks sought review on the issue of whether the Court of Appeals erred in denying him a new trial for the ineffective assistance of his trial counsel simply because the panel assessed the victim to be credible. We granted the petition.

PREJUDICE FROM INEFFECTIVE ASSISTANCE OF COUNSEL

*Standard of Review*

A claim of ineffective assistance of counsel involves mixed questions of law and fact. The appellate courts examine the record for supporting evidence but apply the proven facts to determine de

novo whether they demonstrate ineffective assistance of counsel. See *State v. Sanchez-Cazares*, 276 Kan. 451, 457, 78 P.3d 55 (2003).

*Analysis*

The Sixth Amendment to the United States Constitution guarantees in "all criminal prosecutions" that "the accused shall enjoy the right . . . to have the Assistance of Counsel for his defence." This right includes the *effective* assistance of counsel. *Strickland*, 466 U.S. at 687; *Chamberlain v. State*, 236 Kan. 650, 656-57, 694 P.2d 468 (1985). The purpose of the Sixth Amendment's right to effective assistance of counsel is "simply to ensure that criminal defendants receive a fair trial." *Strickland*, 466 U.S. at 689. The Sixth Amendment right to effective assistance of counsel is made applicable to state proceedings by the Fourteenth Amendment to the United States Constitution. *State v. Galaviz*, 296 Kan. 168, 174, 291 P.3d 62 (2012).

*Strickland* established a two-prong test for determining if a criminal defendant's Sixth Amendment right to effective assistance of counsel has been violated. 466 U.S. at 687-96. Kansas courts adopted this test in *Chamberlain*, 236 Kan. at 656-57. Under the first prong, a defendant must demonstrate that counsel's performance was deficient. 236 Kan. at 656. In determining whether counsel's performance was deficient, the defendant must show that

"[c]ounsel's representation fell below an objective standard of reasonableness. Judicial scrutiny of counsel's performance must be highly deferential, and a fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. A court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." 236 Kan. at 656-57.

In analyzing whether Brook's trial counsel was deficient under the first prong of *Strickland*, the Court of Appeals considered this court's decision in *State v. Greene*, 272 Kan. 772, 37 P.3d 633 (2001). *Greene* held that trial counsel's failure to request a trial continuance in order to address newly discovered information con-

stituted deficient performance. 272 Kan. at 783. Here, the panel determined that S.C.'s testimony regarding the scar on Brooks' penis constituted newly discovered information and that such new evidence "may have been a significant avenue to impeach her testimony if Brooks could prove that her observations were without basis in fact." *Brooks*, 2011 WL 2793303, at *4. Consequently, the panel found defense counsel's performance to be deficient for failing to take any action to explore or utilize the newly available impeachment strategy. 2011 WL 2793303, at *4. The State has not requested review of the Court of Appeals holding that Brooks met the first prong of the *Strickland* test, and we will proceed on the basis that trial counsel's performance was constitutionally deficient.

The second prong of *Strickland* is a prejudice analysis to determine whether reversal is required; the court must decide whether counsel's deficient performance prejudiced the defense so as to deprive the defendant of a fair trial. *Chamberlain*, 236 Kan. at 656.

"(b) With regard to the required showing of prejudice, the proper standard requires the defendant to show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome. A court hearing an ineffectiveness claim must consider the totality of the evidence before the judge or jury." *Chamberlain*, 236 Kan. at 657.

*Strickland* further explained: "[T]he defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." 466 U.S. at 687.

Despite its acknowledgement that "the credibility of S.C. was critical to the State's prosecution" and that "an effective impeachment of that credibility would have been significant," the Court of Appeals opined that defense counsel's failure to impeach S.C.'s statement about Brooks' penile scar did not deny Brooks a fair trial. *Brooks*, 2011 WL 2793303, at *4-5. To reach that conclusion, the panel first speculated about the weight the jury might have given to such impeachment evidence:

"[E]ven if counsel had been successful in obtaining a continuance and proving that Brooks no longer had such a scar, what impact would that have had on the jury? Was it really a 'scar' when first purportedly seen by S.C.? Would that nec-

essarily have impeached S.C.'s testimony about what she saw and experienced at least 4 years and perhaps 10 years prior to trial? Is such a scar permanent so that it would still be there? For these reasons, we question the effectiveness of any such attempt at impeachment." 2011 WL 2793303, at *4.

Next, the panel engaged in an assessment of S.C.'s credibility, concluding that her believability with the jury would have survived the successful rebuttal of her allegedly inaccurate description of Brooks' penis. 2011 WL 2793303, at *5. In doing so, the panel glossed over the credibility issues arising from S.C.'s prior untruthful statements about her sexual activities with others and declared that "her overall credibility was anchored in her expressed anxiety in 'outing' her stepdad." 2011 WL 2793303, at *5. Interestingly, the panel's credibility calculus did not include any reference to the jury's acquittal of Brooks on five of the seven counts upon which S.C. testified nor any rumination upon what inference might be drawn therefrom about the jury's view of S.C.'s credibility.

Given the panel's stated reasons for finding no prejudice, we discern that it ran afoul of the oft-stated rule that an appellate court will not determine the credibility of witnesses or weigh conflicting evidence. See *State v. Moore*, 269 Kan. 27, 30, 4 P.3d 1141 (2000). "The jury is charged with the responsibility of weighing the evidence and determining witness credibility. Appellate courts do not reweigh the evidence or decide which witnesses are credible." *State v. Corbett*, 281 Kan. 294, 310, 130 P.3d 1179 (2006).

The relative importance of testimony about the presence or absence of a penile scar was something the jury was supposed to decide. The panel's queries about the scar evidence, *e.g.*, whether such a scar is permanent, went to the weight to be attached to that evidence and invaded the province of the jury. Likewise, the panel was figuratively on jury duty when it assessed the credibility of the victim. Appellate courts should "let the jury decide whether to believe a witness." *State v. Leaper*, 291 Kan. 89, 108, 238 P.3d 266 (2010) (Johnson, J., concurring). Certainly, appellate courts should not excuse constitutional violations based upon a cold record assessment of a witness' believability.

Although Brooks was provided the opportunity to cross-examine S.C., he was denied the opportunity to do so effectively because

of his counsel's deficient performance. A defendant's right to impeach a complaining witness' credibility is a fundamental right, protected by the Confrontation Clause of the Sixth Amendment: "In all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." The primary purpose of the Confrontation Clause is to give the accused the opportunity for cross-examination to attack the credibility of the State's witnesses. *State v. Johnson*, 240 Kan. 326, 329, 729 P.2d 1169 (1986) (citing *Delaware v. Van Arsdall*, 475 U.S. 673, 679, 106 S. Ct. 1431, 89 L. Ed. 2d 674 [1986]; *Davis v. Alaska*, 415 U.S. 308, 315, 94 S. Ct. 1105, 39 L. Ed. 2d 347 [1974]), *cert. denied* 481 U.S. 1071 (1987). " 'By allowing criminal defendants to cross-examine witnesses and by allowing the trier of fact to evaluate the credibility of those witnesses, the right of confrontation promotes both the reliability of criminal trials and the perception of fairness in our criminal justice system.' " *State v. Humphrey*, 252 Kan. 6, 21, 845 P.2d 592 (1992) (quoting *Myatt v. Hannigan*, 910 F.2d 680, 682 [10th Cir. 1990]).

Where a court has denied a defendant's opportunity to impeach a complaining witness, we have found reversible prejudice. See *State v. Atkinson*, 276 Kan. 920, 927-29, 80 P.3d 1143 (2003) (precluding cross-examination of complaining witness about prior consensual sexual relationship with defendant violated "fundamental right to a fair trial" because witness' credibility critical issue); see also *State v. Macomber*, 241 Kan. 154, 158-59, 734 P.2d 1148 (1987) (reversing conviction when cross-examination not allowed about allegedly false preliminary hearing testimony of key witness). Likewise, in *State v. Beans*, 247 Kan. 343, 800 P.2d 145 (1990), where a defendant charged with rape was prohibited from introducing evidence impeaching the complaining witness' testimony on a collateral matter, this court found reversible error:

"In the present case, consent was the sole issue in dispute concerning the rape charge against Beans. Thus, the truthfulness of G.W.'s testimony was an all-important element in the State's case. Where the State offered testimony by G.W. concerning her prior conviction of prostitution and probation, the trial court erred in refusing to allow rebuttal evidence to show the falsity in her testimony. The credibility of G.W. is the heart of the State's case." 247 Kan. at 348.

See also *State v. Davis*, 237 Kan. 155, 161, 697 P.2d 1321 (1985); *State v. Nixon*, 223 Kan. 788, 796-97, 576 P.2d 691 (1978) (both finding prejudicial error where defendant was prohibited from introducing evidence to impeach credibility of complaining witness).

Here, the truthfulness of S.C.'s testimony "was an all-important element in the State's case," *Beans*, 247 Kan. at 348, and the fairness of the trial hinged upon Brooks' exercise of his fundamental right to test the reliability of that critical testimony "in the crucible of cross-examination." *Crawford v. Washington*, 541 U.S. 36, 61, 124 S. Ct. 1354, 158 L. Ed. 2d 177 (2004). The fact that Brooks was denied that fundamental right of cross-examination through unconstitutionally deficient counsel, rather than court order, does not render the trial any more fair or the results thereof any more reliable.

Furthermore, in this case, the State took full advantage of the deficient performance of defense counsel. During closing argument, the prosecutor argued to the jury: "You heard [S.C.] which is unrefuted describe Mr. Brooks' genitalia. How it was uncircumcised and how it had a small scar. Unrefuted. How would she know that?" Thus, not only was Brooks denied the opportunity to attack S.C.'s credibility with her allegedly false testimony, but the failure to cross-examine S.C. permitted the State to bolster the credibility of its complaining witness as being unrefuted. Then, having established the scar testimony as being true because it was unrefuted, the State used the substance of the statement to suggest that the abuse must have occurred because that was the only way that S.C. would have seen the scar on Brooks' penis. That use of the scar testimony would suggest that the prosecutor considered it to be a weightier part of the State's case than did the panel.

In short, trial counsel's unconstitutionally deficient performance denied Brooks the opportunity to impeach S.C.'s credibility by rebutting her testimony about his alleged penile scar and permitted the State to bolster the credibility of its complaining witness. That deficient performance prejudiced the defense, denied Brooks a fair trial, and created the reasonable probability that, but for counsel's unprofessional errors, the result of the trial would have been different. In finding otherwise, the Court of Appeals improperly

usurped the role of the jury by considering the weight the jury would have assigned to the scar testimony and by relying on its own perception of S.C.'s credibility. The Court of Appeals erred in determining that Brooks had failed to establish the second prong of *Strickland*. The decision of the Court of Appeals, affirming the district court, is reversed; the judgment of the district court is reversed; and the matter is remanded to the district court for a new trial.

Reversed and remanded for a new trial.