NOT DESIGNATED FOR PUBLICATION

No. 110,746

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

KURT HERTING,
*Appellant*.

MEMORANDUM OPINION

Appeal from Dickinson District Court; BENJAMIN SEXTON, judge. Opinion filed December 11, 2015. Affirmed.

*Rick Kittel*, of Kansas Appellate Defender Office, for appellant.

*Daryl E. Hawkins*, county attorney, and *Derek Schmidt*, attorney general, for appellee.

Before ARNOLD-BURGER, P.J., POWELL, J., and MERLIN G. WHEELER, District Judge, assigned.

*Per Curiam*:  Kurt Herting appealed his convictions on three drug-related offenses on two grounds:  first, the district court erred in denying his motion for new trial, and second, his rights were violated when the jury was permitted to retain exhibits during deliberations. Because the motion for new trial was untimely, we determined that we lacked jurisdiction to consider the issue and otherwise affirmed Herting's convictions. However, in *State v. Reed*, 302 Kan. 227, Syl. ¶ 1, 352 P.3d 530 (2015), our Kansas Supreme Court held that a court is not without jurisdiction to hear the merits of an untimely motion for new trial based on ineffective assistance of counsel. In light of this

1

rule, the court remanded the case to us to consider the merits of Herting's ineffective assistance of counsel claim. After considering Herting's arguments, we affirm the district court.

FACTUAL AND PROCEDURAL HISTORY

Highly summarized, the State charged Herting with several drug-related offenses after Herting and a confidential informant named Matthew Luthi drove around and collected supplies to manufacture methamphetamine. *State v. Herting*, No. 110,746, 2015 WL 1882105, at *1 (Kan. App) (unpublished opinion), *rev. granted* October 22, 2015. Luthi's account of that evening constituted a significant portion of the State's evidence at trial. Luthi detailed everything from his initial contact with Herting to their various stops to collect supplies. Luthi testified openly about his role as a confidential informant, admitting both on direct and cross-examination that he needed to work off his charges after he "got busted." Herting's attorney questioned Luthi extensively about his past, and Luthi acknowledged that he "became a confidential informant . . . to save [his] own butt."

A lieutenant from the Dickinson County Sheriff's Department, Greg Swanson, also discussed Luthi during his testimony, explaining that Luthi's involvement with the department began after he sold methamphetamine to an individual already working as a confidential informant. Because of the charges against him, "[Luthi] elected to help himself out by making other purchases, provide [*sic*] information, things of that nature, to help those charges." At the time of Herting's trial, Luthi had assisted in approximately eight investigations. In terms of the benefit received, Swanson admitted on cross-examination that Luthi's assistance had absolved him of all charges.

After the jury convicted Herting, he obtained new counsel, and his new attorney filed a motion to arrest judgment or for a new trial based in part on ineffective assistance of counsel. There, he argued that Herting's original counsel failed to meaningfully cross-

2

examine Luthi and to request a cautionary instruction regarding accomplice testimony. The motion also included other jury instruction issues that Herting later withdrew.

Before sentencing, the district court heard argument on Herting's motion. Herting reiterated that trial counsel failed to adequately research Luthi's background and question him on the particulars of "his credentials [and] his veracity." He also drew attention to counsel's failure to request an accomplice instruction in light of the fact that Luthi "provided the pills, provided transportation, [and] personally purchased the heat." The State responded that the jury was well aware of both Luthi's history and his status as a confidential informant.

But the district court declined to grant Herting a new trial. The district court reasoned that "it was very well understood" that, as a confidential informant, Luthi "did not come into this [case] with clean hands." Regarding the accomplice instruction in particular, the district court determined that the evidence at trial demonstrated that Herting, not Luthi, controlled the operation. The district court also pointed out that evidence other than Luthi's testimony supported the conviction.

Herting raised two issues on appeal, including the denial of his motion for new trial. At the time we dismissed the issue related to his motion for new trial for want of jurisdiction, our Supreme Court had yet to issue a decision in *Reed*. With *Reed* now decided and jurisdiction firmly established, we must finally answer the question raised in that motion: was Herting entitled to a new trial based on his counsel's ineffectiveness?

ANALYSIS

As a general matter, "'[t]he decision to grant or deny a motion for new trial rests in the sound discretion of the district court,'" and this court will only reverse if the trial court abuses that discretion. *State v. Fulton*, 292 Kan. 642, 648, 256 P.3d 838 (2011). Such an

3

abuse occurs if the district court's action is (1) arbitrary, fanciful, or unreasonable; (2) based on an error of law; or (3) based on an error of fact. *State v. Mosher*, 299 Kan. 1, 3, 319 P.3d 1253 (2014). The party asserting that the district court abused its discretion bears the burden of showing such abuse. *State v. Rojas-Marceleno*, 295 Kan. 525, 531, 285 P.3d 361 (2012).

A defendant attempting to establish ineffective assistance of counsel must demonstrate two things. First, he or she must show that counsel's performance was constitutionally deficient, which requires a showing that counsel made errors so serious that his or her performance was less than that guaranteed by the Sixth Amendment to the United States Constitution. Second, the defendant must demonstrate that counsel's deficient performance prejudiced the defense, which requires a showing that counsel's errors were severe enough to deprive the defendant of a fair trial. *Miller v. State*, 298 Kan. 921, 929, 318 P.3d 155 (2014). When analyzing a claim of ineffective assistance of counsel, we must strongly presume that counsel's conduct fell within the broad range of reasonable professional assistance. *State v. Kelly*, 298 Kan. 965, 970, 318 P.3d 987 (2014).

In other words, in order to prevail, Herting must show that his counsel's representation fell below an objective standard of reasonableness and that there was a reasonable probability that the trial's outcome would have been more favorable to him had his attorney not performed below that standard. See *Rowland v. State*, 289 Kan. 1076, 1083, 219 P.3d 1212 (2009). As Herting raises two distinct grounds of ineffectiveness, we will address each in turn.

*Failure to adequately cross-examine Luthi*

First, Herting asserts that counsel failed to adequately cross-examine Luthi. Herting argues that counsel should have developed more information about Luthi's criminal past and the charges that inspired Luthi to become a confidential informant.

The right to cross-examination is drawn from the Sixth Amendment of the United States Constitution, and its primary purpose is to attack the credibility of the State's witnesses. See *State v. Brooks*, 297 Kan. 945, 952, 305 P.3d 634 (2013). Failure by counsel to impeach the credibility of a witness whose testimony is vital to the State's case can prejudice the defendant and constitute ineffective assistance. 297 Kan. at 952-54. However, "[t]he decisions on what witnesses to call, whether and how to conduct cross-examination . . . and all other strategic and tactical decisions are the exclusive province of the lawyer after consultation with his or her client." *Bledsoe v. State*, 283 Kan. 81, 92, 150 P.3d 868 (2007). As such, the appropriate question when analyzing an attorney's decisions in this area is whether the attorney's choices were objectively reasonable. See 283 Kan. at 93.

Illustrations from other cases regarding cross-examination strategies are helpful in considering Herting's argument. For example, in *Brooks*, the minor victim testified that the defendant had a scar on the side of his genitalia. The defendant told his counsel that no such scar existed, but counsel never challenged the victim's claim. Our Supreme Court determined that counsel's failure to impeach the victim on this point constituted ineffective assistance of counsel. 297 Kan. at 953. According to the court, "the truthfulness of [the victim's] testimony 'was an all-important element in the State's case,' [citation omitted], and the fairness of the trial hinged upon [the defendant's] exercise of his fundamental right to test the reliability of that critical testimony." 297 Kan. at 953. Finding that the "deficient performance . . . created the reasonable probability that, but

5

for counsel's unprofessional errors, the result of the trial would have been different," the court reversed his conviction. 297 Kan. at 953.

But not all failures to cross-examine or impeach a witness are severe enough to constitute reversible error. In *State v. Edwards*, 48 Kan. App. 2d 383, 415, 290 P.3d 661 (2012), the defendant claimed ineffective assistance in part due to counsel's failure to cross-examine a doctor on a specific medical issue. But this court determined that another witness had already explained that medical issue and "eliminat[ed] the need for [counsel] to ask" the doctor about that particular subject. 48 Kan. App. 2d at 415. In another case, the movant in a K.S.A. 60-1507 proceeding argued that counsel failed to attack a witness' credibility on cross-examination. *Percival v. State*, No. 93,330, 2005 WL 3455774, at *3 (Kan. App. 2005) (unpublished opinion). But looking to the movant's direct appeal, we determined that "defense counsel vigorously challenged [the witness'] credibility" using his prior convictions, drug use, threats to others, and allegations of prostitution. 2005 WL 3455774, at *3. By the end of cross-examination, we concluded, "'the jury was certainly aware of [the witness'] potential lack of credibility.'" 2005 WL 3455774, at *3. Along the same lines, counsel's failure to "more forcefully" press a witness on a given point is not ineffective when "the jury was clearly apprised of" the facts underlying that issue. *State v. Coones*, 301 Kan. 64, 77, 339 P.3d 375 (2014). Similarly, counsel's failure to "ask more specific questions relating to [a witness'] inconsistent statements" was not ineffective when the attorney still sought to discredit the witness in other ways. *Boldridge v. State*, 289 Kan. 618, 640, 215 P.3d 585 (2009).

A review of the testimony in this case indicates that counsel adequately cross-examined Luthi, especially on the subject of his credibility. Preliminarily, much of the information about Luthi's past, including the charges he was "work[ing] off" and his history with methamphetamine, was developed by the State during direct examination, where Luthi candidly admitted to knowing how to "cook" the drug. Herting's counsel opened cross-examination by establishing that Luthi became a confidential informant to

6

"save [his] own butt" and followed through with that theme for several questions. He also called Luthi's credibility into question in other ways, impeaching inconsistent statements from the preliminary hearing and questioning Luthi on his purchase of starter fluid and how exactly his conversation with Herting about methamphetamine began. And while Luthi claimed at the preliminary hearing that he would "do 17 years" unless he became a confidential informant, the failure to specifically ask him about this statement or the charges he faced is not objectively unreasonable in the light of the other testimony that firmly established Luthi's drug background and his intent to "save [his] own butt."

Herting also claims that counsel failed to impeach Luthi with two prior convictions for crimes of dishonesty: conspiracy to commit theft and attempted aggravated escape from custody. Herting apparently discovered these prior convictions on Luthi's Kansas Adult Supervised Population Electronic Repository (KASPER) report. Because the district court did not hold an evidentiary hearing on this issue, it is unclear whether counsel knew about the convictions listed on the KASPER record or whether this record is even accurate. But assuming for the sake of argument that this report accurately reflects Luthi's prior convictions, Herting's argument on this point still fails.

K.S.A. 60-421 provides that convictions of crimes involving dishonesty or false statement are admissible for the purposes of impeaching a witness' credibility. In *Tucker v. Lower*, 200 Kan. 1, 5, 434 P.2d 320 (1967), our Supreme Court analyzed the language of the then recently enacted statute and concluded that "the category of crimes permitted to test credibility" included those "perpetrated by the use of fraud, deceit, perjury, trick, or false statements." However, the court also reasoned that crimes of larceny "generally involve[] a willful injury to another person or his property and a considered disregard for such injury," and "steal[ing] is understood to be dishonest." 200 Kan. at 5. As such, larceny crimes, including theft, are considered crimes of dishonesty. *Phillips v. State*, 282 Kan. 154, 177, 144 P.3d 48 (2006).

7

Clearly, Luthi's prior conviction for conspiracy to commit theft is a crime of dishonesty and admissible under K.S.A. 60-421. In contrast, his attempted aggravated escape from custody conviction obviously falls outside the statute. And although Herting attempts to rescue this conviction by arguing that Luthi could have theoretically employed deceitful methods when attempting escape from custody, our Supreme Court has established that K.S.A. 60-421 offenses are ones in which dishonesty is inherent in the commission of the crime. See *State v. Belote*, 213 Kan. 291, 294, 516 P.2d 159 (1973) (holding that drug offenses are inadmissible under K.S.A. 60-421 because they "*per se* do not involve dishonesty or false statement in their commission"); *Tucker*, 200 Kan. at 5 (holding that "[d]runkenness, reckless driving, allowing an unauthorized person to drive and having an open bottle in the car are not generally considered to be crimes of an inherently bad nature" and are therefore inadmissible under K.S.A. 60-421). The specific facts underlying Luthi's escape from custody are therefore immaterial; because the offense is not inherently dishonest, that conviction is inadmissible for impeachment purposes.

As for the conspiracy to commit theft conviction, the record clearly indicates that trial counsel impeached Luthi's credibility in a variety of other ways. Again, counsel opened cross-examination by asking whether Luthi was there to "to save [his] own butt" and continually highlighted other issues in Luthi's testimony. Additionally, and as will be discussed later, the jury received an instruction warning that Luthi's testimony should be "consider[ed] with caution." Herting offers no explanation as to how revealing this single prior conviction would have enhanced the already thorough impeachment of Luthi's credibility.

Because there was no evidentiary hearing on the ineffectiveness issue, it is unknown whether counsel actually knew about this conviction. It is just as likely that counsel knew about Luthi's prior convictions but still elected against using it for impeachment purposes. As previously noted, we must strongly presume that counsel's

8

conduct fell within the broad range of reasonable assistance. *Kelly*, 298 Kan. at 970. With that presumption in mind, it was not objectively unreasonably to not impeach Luthi using his conviction for conspiracy to commit theft.

Returning briefly to the attempted aggravated escape from custody conviction, Herting finally argues that, regardless of the dishonesty involved, the conviction was admissible under K.S.A. 60-420 as evidence of Luthi's bias or interest in the outcome of the case. Specifically, Herting alleges that Luthi's attempt to escape from custody demonstrates his "willingness to engage in illegal activity to avoid incarceration." But like with the theft conviction, Luthi's interest in avoiding incarceration was clearly demonstrated through other testimony. Herting fails to demonstrate how the jury's knowledge of this specific incident would add to the other, clear indicators of Luthi's self-interest.

In sum, Herting's trial counsel did not act ineffectively in his cross-examination of Luthi. Counsel impeached Luthi's credibility in such a way that developing more specific facts about his past or admitting evidence of his prior convictions was unnecessary, and Herting fails to show how cross-examination on these relatively small issues would have altered the course of the trial. The district court did not abuse its discretion by denying the motion for new trial on this ground.

*Failure to give an accomplice instruction*

Second, Herting contends that counsel acted ineffectively by failing to request a jury instruction regarding accomplice testimony. The instruction at issue, PIK Crim. 4th 51.090, reads as follows: "An accomplice witness is one who testifies that (he) (she) was involved in the commission of the crime with which the defendant is charged. You should consider with caution the testimony of an accomplice." The instruction's Notes on Use indicate that "the better practice is for the trial court to give a cautionary instruction"

regardless of whether the accomplice's testimony is corroborated by other evidence. PIK Crim. 4th 51.090.

Obviously, the district court did not give this instruction at trial. However, the jury was provided another cautionary instruction, PIK Crim. 4th 51.100. That instruction, which is specific to informant testimony, reads: "You should consider with caution the testimony of any informant who, in exchange for benefits from the State, acts as an agent for the State in obtaining evidence against a defendant, if that testimony is not supported by other evidence." PIK Crim. 4th 51.100. The Notes on Use for this instruction indicate that it must be given if the "informant's testimony is substantially uncorroborated." PIK Crim. 4th 51.100.

Examining these two instructions side by side indicates that they provide almost the exact same warning. Both instruct the jury to "consider with caution the testimony" of a given individual. Compare PIK Crim. 4th 51.090 with PIK Crim. 4th 51.100. Both assist the jury by defining which witness the caution is directed toward. Compare PIK Crim. 4th 51.090 (defining accomplice) with PIK Crim. 4th 51.100 (defining informant). The only significant difference is that the accomplice instruction lacks the language regarding uncorroborated testimony, rendering it slightly broader than the informant instruction. It is unclear when the informant instruction was requested, as neither party submitted it as a proposed instruction; however, Herting's attorney approved of the informant instruction after the instruction conference.

Herting argues on appeal that counsel should have requested both instructions "because there was more than one reason for the jury to view Luthi's testimony with caution." But a jury receiving the general instruction to assess the weight and credibility of witness testimony will likely already treat accomplice testimony with caution regardless of a cautionary instruction. See *State v. Moore*, 229 Kan. 73, 80, 622 P.2d 631 (1981). Here, the testimony at trial clearly demonstrated Luthi's status as an informant,

his potential credibility issues, and his involvement in the crime. Luthi never denied that he provided the cold medication or purchased the starter fluid. He also openly admitted to knowing the process and odors associated with the production of methamphetamine. The jury needed no specific accomplice instruction to recall Luthi's involvement or to consider his testimony cautiously.

Given the similarities between the accomplice and informant instructions and the likelihood that the jury would already approach Luthi's testimony with caution, then, Herting's trial counsel did not act ineffectively in failing to request the accomplice instruction. The district court did not abuse its discretion in denying the motion for new trial, and the decision, accordingly, is affirmed.

Affirmed.